IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY 𝓖𝓵 D.C.

05 OCT 19  AM 10: 15

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN. MEMPHIS

AARON MALONE,

     Plaintiff,

v.                                                        No. 03-2869 B

STATE OF TENNESSEE,
TENNESSEE DEPARTMENT OF CORRECTIONS,
BRUCE WESTBROOKS, in his individual capacity,
and JAMES M. DUKES, in his individual capacity,

     Defendants.

---

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS

---

     Plaintiff, Aaron Malone, brought this action against the Defendants, Tennessee Department

of Correction ("TDOC"), Bruce Westbrooks ("Westbrooks"), and James M. Dukes ("Dukes"),

alleging discrimination on the basis of race and retaliation, in violation of Title VII of the Civil

Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq.; Title VI of the Civil Rights Act of 1964,

42 U.S.C. § 2000d, et seq.; 42 U.S.C. § 1981; and the Tennessee Human Rights Act ("THRA"),

codified at Tennessee Code Annotated § 4-21-101, et. seq.  Before the Court is the motion of the

Defendants to dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure.  The Plaintiff has

responded to Defendants' motion which is now appropriate for disposition.

FACTS

     TDOC operates the West Tennessee State Penitentiary ("Penitentiary"), a correctional

institution located in Henning, Tennessee.  (Am. Compl. ¶ 3.)  Plaintiff began working as a

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on 10-19-05

45

Correctional Officer at the Penitentiary on October 15, 1973. (Id. ¶ 8.) In 1976, Malone was promoted to the position of Corporal and continued working in this capacity until 1985 when he was promoted to the position of Sargeant. (Id. ¶ 9.) Plaintiff asserts that during his service as a Correctional Officer he completed all required supervisory training and received exceptional ratings. (Id.) Between the years of 1985 and 1998, Plaintiff maintained his position of Sargeant at the Penitentiary. (Id. ¶ 10.) During this period, Malone had no disciplinary actions taken against him, was not late for work, and received all required training as well as exceptional ratings. (Id.) After serving as a Sargeant for thirteen years, Plaintiff was promoted to the position of Lieutenant in 1998. (Id.) While a Lieutenant, Plaintiff sought promotion to the position of Correctional Captain on eleven occasions, all of which were denied. (Id. ¶ 11.)

Following the denial of his eleventh request for promotion on September 24, 2001, Plaintiff filed an employee grievance three days later with TDOC alleging racial discrimination in the Penitentiary's promotion process. (Id. ¶ 12; Pl.'s Opp. Def.'s Mot. Dismiss ("Pl.'s Opp."), Ex. A at 1 and Ex. C at 1.) Defendant Dukes, employed by TDOC as a Warden at the Penitentiary, responded to Malone's complaint on behalf of TDOC. (Compl. ¶¶ 4, 13.) TDOC acknowledged that Plaintiff's performance evaluations were exceptional, but noted several areas in which he had experienced problems including, supervision of employees with regard to resolving conflicts with staff; unclear oral and written communications; and failure to ensure that evaluations were complete before signing them. (Id. ¶ 13.)

On November 26, 2001, approximately two months after filing his grievance with TDOC, Plaintiff received a negative write-up for failure to follow TDOC policies and procedures and to post orders after he received a report that keys had been stolen from the Penitentiary. (Id. ¶ 14; Pl.'s

Opp. Ex. C at 1.) As a result of this incident, Plaintiff was placed on administrative leave with pay for ten days. (Compl. ¶ 14; Pl.'s Opp Ex. A at 1.) Following his suspension, on July 2, 2002, Plaintiff received an exceptional evaluation.[1] (Id. ¶ 16.) Thereafter, on July 3, 2002, Plaintiff re-filed his grievance with TDOC alleging that his recent suspension was "to get back at him" for his original filing. (Id.)

On September 30, 2002, Plaintiff filed a grievance letter with the Tennessee Human Rights Commission ("THRC") alleging unlawful race-based discrimination by TDOC. (Pl.'s Opp. at 5.) THRC subsequently issued Plaintiff a charge of discrimination, (Charge No. 200073A) and concurrently filed the charge with the Equal Employment Opportunity Commission ("EEOC") as Charge No. 25AA300045 on October 15, 2002. (Id. at 5-6.) The EEOC charge relates to conduct by TDOC which occurred between September 18, 2001 and July 8, 2002. Specifically, the charge alleges that TDOC (1) failed to promote Plaintiff; (2) denied him a pay raise; (3) intimidated him due to filing a grievance; and (4) suspended him as a result of his filing. (Id. at 6.)

On November 15, 2002 Malone received a second negative write-up and threat to terminate employment from Defendant Westbrooks, then employed by TDOC as a Warden at the Penitentiary. (Id. ¶¶ 3, 17.) Plaintiff received this write up for failure to follow directives during an incident at the Penitentiary on November 1, 2002 during which Plaintiff arrested a visitor for bringing, what he believed, was contraband, in the form of hydrocodone pills, into the institution and providing them to an inmate. (Id. ¶ 17; Pl.'s Opp. Ex. C at 1.) Defendant Westbrooks allegedly took issue with Plaintiff's actions because he did not receive confirmation regarding the identity of the substance

---

[1] According to Plaintiff, this evaluation "was reviewed and signed off on by A.W.O. Tommy Mills" after Defendant Westbrooks was transferred to a different institution. (Pl.'s Opp. Ex. A at 2.)

from the staff nurse before effectuating the arrest, and thus, created a risk of "potential lawsuit" for the institution. (Am. Compl. ¶ 17.) Malone filed an amendment to his charge before the THRC on November 17, 2003, clarifying his previous allegations and including this incident.    (Id. ¶ 6.) Following this disciplinary action, and at Plaintiff's request, TDOC convened a board to review Defendant Westbrooks' disciplinary action on or about December 27, 2002 which affirmed Westbrooks' action. (Compl. ¶ 19; Pl.'s Opp. Ex. C. at 2.) On January 2, 2003, allegedly as a result of harassment by prison officials, Plaintiff took early retirement and ceased employment with TDOC. (Id. ¶ 20.)

Malone commenced this action on November 20, 2003 alleging unlawful discrimination and retaliation by Defendants TDOC, Dukes and Westbrooks. Specifically, Plaintiff alleges disparate treatment and retaliation by TDOC in violation of Title VII and Title VI of the Civil Rights Act of 1964 as well as the THRA. He further asserts claims against Defendants Dukes and Westbrooks in their individual capacities for disparate treatment and retaliation in violation of 42 U.S.C. § 1981. As a remedy, Plaintiff seeks money damages as well as injunctive relief to prevent continuation by Defendants of allegedly unlawful employment practices. On March 12, 2004, Plaintiff amended his complaint to include a Notice of Right to Sue issued by the EEOC to the Plaintiff in relation to EEOC Charge No. 25AA300045 on February 11, 2004. (Id.)

## ANALYSIS

### I. Plaintiff's Claims Against TDOC Pursuant to the Tennessee Human Rights Act

Defendants first assert, pursuant to Federal Rule of Civil Procedure 12(b)(1), that this Court lacks jurisdiction to consider Plaintiff's THRA claims against TDOC, because TDOC, as an agency of the Tennessee state government, is immune from suit by a private individual in

federal court.[2] The law is well settled that "in the absence of consent[,] a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." Pennhurst State School and Hosp. v. Halderman, 465 U.S. 89, 100, 104 S.Ct. 900, 908 (1984); see also Fite v. Hesson, 898 F.2d 153, 153 (6th Cir. 1990) (relying on Pennhurst State School and Hosp. to find that the Tennessee Department of Corrections, as an agency of the State of Tennessee, is protected from suit in federal court by sovereign immunity). Further, "[t]here is no express consent by Tennessee, neither within the THRA nor elsewhere, to suit in federal court for claims under the THRA." Boyd v. Tennessee State Univ., 848 F.Supp. 111, 114 (M.D. Tenn. 1994) (noting that the THRA provides three avenues for pursuing a claim against an employer, none of which includes suit in federal district court); see also Boinapally v. University of Tennessee, 23 Fed. Appx. 512, 515 (6th Cir. 2001) (affirming district court dismissal of THRA claims against "an arm of the state of Tennessee" on the basis of sovereign immunity).

In his opposition to Defendants' motion, Plaintiff did not contest Defendants' assertions regarding TDOC's immunity from suit under the THRA in this Court. In fact, Plaintiff argued only that Defendants' motion to dismiss should be denied as to all issues "*except* Malone's claim against the state pursuant to the Tennessee Human Rights Act." (Pl.'s Opp. at 7.) (emphasis added)  Once the Defendants challenge subject matter jurisdiction by a motion to dismiss, the Plaintiff has the burden of establishing proper jurisdiction. See Moir v. Greater Cleveland Regional Transit Auth., 895 F.2d 266, 269 (6th Cir. 1990). The Court finds that Plaintiff has not met its burden. Accordingly, Defendants' motion to dismiss Plaintiff's THRA claim against

---

[2] In their motion to dismiss, Defendants also argue that Dukes and Westbrooks, as state employees of TDOC, are entitled to the same immunities from suit under the THRA afforded to TDOC. Because Plaintiff's complaint states a cause of action under the THRA against TDOC only, Defendants' argument as to the immunity of Dukes and Westbrooks under the THRA is not addressed.

TDOC is GRANTED.

### II.  Plaintiff's Claims Against Defendants Dukes and Westbrooks in their Individual Capacities Pursuant to the Civil Rights Act of 1991 (42 U.S.C. § 1981)

Defendants assert that Plaintiff's claims against Defendants Dukes and Westbrooks in their individual capacities must be dismissed on the grounds that there is no individual liability under Title VII of the Civil Rights Act of 1964.  (Def.'s Mot. Dismiss ("Def.'s Mot." at 7.)  However, as Plaintiff notes in his response, the complaint does not state a cause of action against Defendant Dukes or Defendant Westbrooks under Title VII.  (Pl.'s Opp. at 7; Am. Compl. ¶ 23(b).)  Rather, Plaintiff asserts claims in his complaint against Defendants Dukes and Westbrooks, acting in their individual capacities, for disparate treatment and retaliation in violation of the Civil Rights Act of 1991, 42 U.S.C. § 1981.  (Id.)

Section 1981 provides that all persons shall have the right to "the full and equal benefit of all laws and proceedings for the security of persons and property." 42 U.S.C. § 1981. "The law is clear that individuals may be held liable for violations of §1981." Jones v. Continental Corp., 789 F.2d 1225, 1231 (6th Cir. 1986); see also Allen v. Ohio Dep't of Rehabilitation & Correction, 128 F. Supp. 2d 483, 495 (S.D. Ohio) (finding that state employee's claim for money damages brought against state prison officials in their individual capacities under § 1981 was not barred by the Eleventh Amendment).  To establish individual liability, the defendant must have been personally involved in the discriminatory action.  Id.  In the instant case, Defendant Dukes reviewed and responded to Plaintiff's grievance charge within TDOC regarding the denial of Plaintiff's eleven requests for promotion from Lieutenant to Correctional Captain, conduct Plaintiff alleges to demonstrate a racially discriminatory practice.  Defendant Westbrooks administered Plaintiff's disciplinary action in November 2002, which Plaintiff alleges to have

6

been issued in retaliation for filing a grievance with TDOC. The Court finds that these acts satisfy the requirement of § 1981 that Defendants Dukes and Westbrooks were personally involved in the allegedly discriminatory action. See Allen, 128 F. Supp. 2d at 495 (finding personal involvement requirement satisfied where defendant was directly involved in administration of disciplinary actions against plaintiff employee). Thus, Defendants' motion to dismiss Plaintiff's claims against Defendants Dukes and Westbrooks in their individual capacities pursuant to 42 U.S.C. § 1981 is DENIED.

## II. Timeliness of Plaintiff's Claims

Defendant also maintains that Plaintiff's claims against Defendants TDOC, Dukes, and Westbrooks should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted because the applicable statute of limitations ran prior to the commencement of this action. When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief." Grindstaff v. Green, 133 F.3d 416, 421 (6th Cir. 1998). As Plaintiff's claims arise under different statutes with differing statutes of limitations, the timeliness of each of Plaintiff's causes of action will be discussed separately. Further, since this Court has dismissed Plaintiff's cause of action against TDOC under THRA, the timeliness of that claim will not be addressed.

### a. 42 U.S.C. § 1981 Claims Against Defendants Dukes and Westbrooks

Section 1981 does not itself contain a statute of limitations. See 42 U.S.C. 1981. In Goodman v. Lukens Steel Co., the Supreme Court held that federal courts should apply the "most

7

appropriate or analogous state statute of limitations" to claims based on § 1981.  Goodman v.
Lukens Steel Co., 482 U.S. 656, 660, 107 S. Ct. 2617, 2620, 96 L.Ed.2d 572 (1987).  The Sixth
Circuit subsequently held that the limitations period for § 1981 actions in Tennessee was the
state's one-year period provided by Tenn. Code Ann. § 28-3-104.  See Jackson v. Richards Med.
Co., 961 F.2d. 575, 578 (6th Cir. 1992).  However, on December 1, 1990 Congress enacted a
catch-all four-year statute of limitations provision applicable to all federal caused of action
arising on or after that date.[3]  Plaintiff asserts that this four-year limitations period should apply
to his claims in the instant case.  Conversely, Defendants maintain that the one-year limitations
period provided by Tennessee law should apply.  (Def.'s Mot. at 10.)  In support of their position,
Defendants cite Coleman v. Shoney's, Inc., a case in which this Court held that the four-year
"catch-all" statute of limitations provided by 28 U.S.C. § 1658 for all federal statutes enacted
after December 1, 1990 did not apply to a claim for racially discriminatory termination pursuant
to § 1981.  Coleman v. Shoney's, Inc., 145 F.Supp. 2d 934 (W.D. Tenn. 2001).  For the reasons
set forth below, this Court finds that Coleman is no longer reliable authority on the statute of
limitations applicable to causes of action under § 1981.  See Jones v. R.R. Donnelly & Sons Co.,
541 U.S. 369, 382, 124 S.Ct. 1836, 1845 (2004).

   42 U.S.C § 1981, as first enacted in 1870, provided that "[a]ll persons within the
jurisdiction of the United States shall have the same right in every State and Territory to make
and enforce contracts . . . as is enjoyed by white citizens . . ."  Id. at 372; 42 U.S.C. § 1981.  In
Patterson v. McLean Credit Union, 491 U.S. 164, 177-78, 109 S.Ct. 2363, 2372-74, 105 L.Ed.2d

---

   [3] 28 U.S.C. § 1658 provides that "[e]xcept as otherwise provided by law, a civil action arising
under an Act of Congress enacted after [December 1, 1990] may not be commenced later than 4 years
after the cause of action accrues." 28 U.S.C. § 1658(a).

132 (1989) the Supreme Court held that the statutory right under § 1981 to "make and enforce

contracts" provided protection from discriminatory conduct "in the formation of a contract, but

not to problems that may arise later from the conditions of continuing employment." Id. at 176.

In response, Congress amended § 1981 in 1991 to add a new subsection that defined the term

"make and enforce contracts" to include the "termination of contracts and the enjoyment of all

benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. 1981(b); see

also Jones, 541 U.S. at 373.  As a result of the 1991 amendments, discriminatory conduct by an

employer during the "post-formation" employment relationship is also within the ambit of §

1981.

In Jones v. R.R. Donnelly & Sons Co., the Supreme Court settled a discrepancy among

the federal courts as to whether the four-year catch-all statute of limitations in § 1658 applies to §

1981 by holding that "the 1991 Act fully qualifies as 'an Act of Congress enacted after December

1, 1990' within the meaning of § 1658." Jones, 541 U.S. at 383.  As such, if a claim was made

possible by the 1991 amendment to § 1981, the four-year statute of limitations provided by §

1658 applies.  Id. at 382;  see also  Anthony, Jr. v. BTR Automotive Sealing Systems, Inc., 339

F.3d 506, 514 (6th Cir. 2003) (noting that "the four-year statute of limitations set forth in 28

U.S.C. § 1658 does indeed apply to § 1981 claims insofar as they arise under the portion of the

statute enacted by the Civil Rights Act of 1991").[4]  Conversely, if the claim was actionable under

§ 1981 prior to the 1991 amendments, the one-year period of limitations from Tennessee law

---

[4]    Although the Sixth Circuit's decision is Anthony, Jr. was prior to the Supreme Court's ruling
in Jones, the courts reached the same conclusion regarding the applicability of § 1658 to claims under §
1981. Compare Jones, 541 U.S. at 382-3 with Anthony, Jr., 339 F.3d at 514 (holding that § 1658 applies
to § 1981 claims "insofar as they arise under the [1991 amendments]").

applies. <u>Jones</u>, 541 U.S. at 382 (noting that the Court's holding "leaves in place the 'borrowed' limitations periods for preexisting causes of action"). Whether a one or four-year statute of limitations applies to Plaintiff's claims depends, therefore, on whether such a claim would have been actionable under the pre-1991 version of § 1981.

Plaintiff asserts claims against Defendants Dukes and Westbrooks under § 1981 for "disparate treatment by not promoting Plaintiff" as well as for "retaliating against Plaintiff and forcing him into early retirement following Plaintiff's grievances." (Am. Compl. ¶ 23(b).) Clearly, Plaintiff's retaliation claims, which relate to conduct by Defendants Dukes and Westbrooks during the course of Plaintiff's employment through its termination, arise under the 1991 Act and thus, the four-year statute of limitations under § 1658 applies. The earliest claim of retaliation alleged by Plaintiff occurred on November 26, 2001, well within the four year limitations period. As such, Plaintiff's retaliation claims under § 1981 are not time barred.

Before the 1991 amendments to § 1981, only those failure to promote claims which rose to the "level of an opportunity for a new and distinct relation between the employee and the employer" were actionable under § 1981. <u>Patterson</u>, 491 U.S. at 185. Thus, where a promotion does not amount to the formation of a new relationship between employee and employer the four-year statute of limitations of § 1658 applies. Several courts have concluded that a "new and distinct relationship" should not be measured by quantitative terms, such as pay raises, but rather by whether there "exists a meaningful, qualitative change in the contractual relationship" such as a change from non-supervisory to supervisory positions or advancements from hourly to salaried compensation. <u>Cross v. The Home Depot</u>, 390 F.3d 1283, 1289-90 (10th Cir. 2004; <u>see also</u> <u>Butts v. City of New York Dept. of Housing Preservation & Dev.</u>, 990 F.2d 1397, 1412 (2d Cir.1993);

Sitgraves v. Allied-Signal, Inc., 953 F.2d 570, 573 (9th Cir.1992).

Defendants have not alleged that the promotions sought by Plaintiff were in fact new and distinct employment relationships with TDOC.   See Akron Presform Mold Co. v. McNeil Corp., 496 F.2d 230, 233 (6th Cir. 1974) (noting that the party asserting the statute of limitations defense has the burden of establishing that the statute has run).  Defendants have not demonstrated a "difference in duties, responsibilities, salary, and benefits between the position which [Plaintiff] held and those [he] sought to be promoted to were so significant that they involved a distinct change in the terms of the express or implied contractual relationship [he] had with defendant." Castle v. Central Benefits Mut. Ins. Co., 940 F.2d 659, at *4 (6th Cir. 1991).  In the absence of this showing, the Court finds that the promotions at issue are "best characterized as a mere advancement in his career path, rather than a new and distinct employment relationship." Cross, 390 F.3d at 1290 (quoting Hooks v. Diamond Crystal Specialty Foods, Inc., 997 F.2d 793, 802 (10th Cir.1993) *overruled on other grounds* by Buchanan v. Sherrill, 51 F.3d 227, 229 (10th Cir.1995)).  Accordingly, this Court finds that the four-year statute of limitations from § 1658 applies to Plaintiff's discriminatory failure to promote claims under § 1981.

Plaintiff may premise his § 1981 claims against Defendants Dukes and Westbrooks for retaliation and failure to promote on actions that occurred on or after November 20, 1999, the four-year mark preceding the date he filed this lawsuit.  Any claims premised on actions prior to that date are time-barred for purposes of § 1981.  The Court notes that actions taken by Defendants Dukes and Westbrooks prior to this date may be admissible as "background evidence in support of a timely claim." National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 113, 122 S.Ct. 2061, 2072, 153 L.Ed.2d 106 (2002).  However, because of the statute of limitations,

11

they are not themselves actionable.

b. Title VII Claims Against TDOC

Defendants also argue that Plaintiff's claims against TDOC pursuant to Title VII of the Civil Rights Act of 1964 are time barred by the charge filing provisions of the Act. (Def.'s Mot. at 10.) Title VII "specifies with precision" the prerequisites that a plaintiff must satisfy before filing suit on a Title VII claim. National R.R. Passenger Corp., 536 U.S. at 109 (quoting Alexander v. Gardner-Denver Co., 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974). Section 2000e-5 requires that an aggrieved individual who seeks to file a Title VII claim in federal court must first file a charge with the EEOC within 180 days "after the allegedly unlawful employment practice occurred." 42 U.S.C. § 20003-5(e)(1). This time period is extended to 300 days if a discrimination charge is also filed with a state or local agency, such as the THRC, that has authority to grant relief regarding the employment practice. Id.; see also Tartt v. City of Clarksdale, No. 04-5925, 2005 WL 2210224, at *3 (6th Cir. Sept. 13, 2005) ("Tennessee is a deferral state for purposes of the federal discrimination statutes"). Because Plaintiff first filed his charge with the THRC, any discriminatory acts by TDOC that occurred within 300 days before September 30, 2002, the day he filed his charge, are actionable.[5]

---

[5] Malone filed his grievance with the THRC on September 30, 2002. While the THRC did not formally file his charge until October 15, 2002, "an EEOC charge is sufficient *when the Commission receives* from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 § C.F.R. 1601.12(b) (emphasis added); see also Edelman v. Lynchburg College, U.S., 535 U.S. 106, 117, 122 S.Ct. 1145, 1152, 152 L.Ed.2d 188 (2002) (accepting as timely filed a letter faxed *to the EEOC* within 300 days of the employment practice complained of) (emphasis added). The Sixth Circuit has held that filing with the state agency constitutes filing with the EEOC for exhaustion purposes. Brown v. Crowe, 963 F.2d 895, 898 (6th Cir. 1992) ("By filing his charge with the THRC – which, under the worksharing agreement, acted as agent for the EEOC, and vice-versa – [Plaintiff] simultaneously filed his charge with the EEOC").

Malone alleges that TDOC subjected him to disparate treatment by not promoting him in a manner as similarly situated white correctional officers and, in addition, that TDOC retaliated against him for filing grievances regarding the discriminatory practices, ultimately forcing him into early retirement.  (Am. Compl. ¶ 23(a).) Plaintiff alleges no acts by TDOC within the 300 days preceding his filing relating to TDOC's alleged discriminatory failure to promote.  In fact, the most recent action related to Plaintiff's promotion was TDOC's denial of his eleventh request for promotion from Lieutenant to Correctional  Captain on September 24, 2001.  Because these acts took place outside of the statutory period, Plaintiff may not recover for these acts under Title VII. See Mohasco Corp. v. Silver, 447 U.S. 807, 825, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980) (noting the imposition of short statutory deadlines as evidence of Congressional intent to "encourage the prompt processing of all charges of employment discrimination").

Plaintiff's retaliation claims are based on four allegedly discriminatory actions by TDOC: (1) the disciplinary action taken by TDOC on November 26, 2001; (2) the second disciplinary action taken on November 15, 2002; (3) the TDOC board review of the disciplinary action on December 27, 2002; and (4) Plaintiff's allegedly forced retirement on January 2, 2003.  With the exception of the November 2001 disciplinary action, all other actions by TDOC are within the 300 day statutory filing requirement.  Plaintiff asserts that it was not until July 2002 that Plaintiff "reasonably determined" that the November 2002 disciplinary action was "a sham."  (Pl.'s Opp. at 9.) Accordingly, he argues that the statutory clock should begin to run on this incident in July 2002, or when "the unlawful employment practice should have been discovered." (Pl.'s Opp. at 9.)

Under the continuing violations doctrine, discriminatory incidents which occur beyond

13

the limitations period may be brought by a plaintiff who "challenges not just one incident . . . but an unlawful practice that continues into the limitations period." Burzynski v. Cohen, 264 F.3d 611, 617-18 (6th Cir. 2001) (quoting Haithcock v. Frank, 958 F.2d 671, 677 (6th Cir. 1992)) (internal quotations and citations omitted). The Sixth Circuit has previously delineated two categories of continuing violations: (1) "where there is evidence of present discriminatory activity" which is related to acts occurring outside the limitations period; and (2) "where there has occurred a long-standing and demonstrable policy of discrimination." Id. at 618. "A continuing violation is one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period." Dasgupta v. Univ. of Wisconsin Bd. of Regents, 121 F.3d 1138, 1139 (7th Cir. 1997).

However, in National R Passenger Corporation v. Morgan,, the Supreme Court restricted the applicability of the continuing violations doctrine. National R.R. Passenger Corp., 536 U.S. at 111-13. In determining whether a plaintiff timely filed a charge of discrimination, the Court held that "[a] discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'" Id. at 110. "A suspension, like a termination, denial of transfer, or refusal to hire, constitutes a separate actionable "unlawful employment practice." Sasse v. U.S. Dept. of Labor, 409 F.3d 773, 783 (6th Cir. 2005). After the Supreme Court's holding in National R.R. Passenger Corp.,"[e]ven when they are related to acts alleged in timely filed charges," discrete discriminatory acts, such as those complained of by Plaintiff, are not actionable if they occurred outside the statutory period. National R.R. Passenger Corp., 536 U.S. at 113.

Following National R.R. Passenger Corp., the Sixth Circuit held in Sharpe v. Cureton that

14

"plaintiffs are now precluded from establishing a continuing violation exception by proof that the alleged acts of discrimination occurring prior to the limitations period are sufficiently related to those occurring within the limitations period." Sharpe v. Cureton, 319 F.3d 259, 268 (6th Cir. 2003) (applying National R.R. PassengerCorp. to 42 U.S.C. § 1983). The court further noted that in order to establish the existence of the remaining category of continuing violations, i.e. a long-standing and demonstrable policy of discrimination, a plaintiff "must demonstrate something more than the existence of discriminatory treatment in [his] case." Id. (citing Haithcock, 958 F.2d at 679). "The preponderance of the evidence must establish that some form of intentional discrimination against the class of which plaintiff was a member was the company's standing operating procedure." Id. (citing EEOC v. Penton Indus. Publishing Co., 851 F.2d 835, 838 (6th Cir. 1988)).

In the instant case, Plaintiff has neither alleged nor established that the second category of continuing violations would apply here. Thus, because the continuing violations doctrine does not apply and Plaintiff did not file a charge alleging that his November 26, 2001 suspension was an unlawful retaliatory act within 300 days of its occurrence, he has lost the ability to recover for it. While this Court will only consider Plaintiff's claims of discrimination regarding actions occurring within this period, as noted herein, Title VII does not bar an employee from using the prior acts as background evidence in support of his timely claims. National R.R. Passenger Corp., 536 U.S. at 113.

c. Title VI Claims Against TDOC

Malone concedes that the applicable statute of limitations for claims arising under Title VI of the Civil Rights Act of 1964 is one year. See Simmons v. Middle Tennessee State

15

<u>University</u>, 117 F.3d 1421, at * 2 (6th Cir. 1997). In his complaint, he asserts claims against TDOC under Title VI for "disparate treatment by not promoting him the same as similarly situated white correctional officers" and "retaliating against [him] and forcing him into early retirement." (Am. Compl. § 23(c).) The one-year statute of limitations bars consideration of actions by TDOC prior to November 20, 2002. As Plaintiff has alleged no facts during this period relating to discriminatory promotion practices by TDOC, Plaintiff's claims under Title VI must be limited to those arising from retaliation occurring after November 20, 2002.

### III. Remand of Plaintiff's THRA Claims

Because the Court has dismissed Plaintiff's claims under THRA, Defendant's motion to remand those claims to state court is DISMISSED as moot.

### CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendants' motion to dismiss Plaintiff's claims under THRA, 42 U.S.C. § 1981, Title VII, and Title VI.

IT IS SO ORDERED this 18 day of October, 2005.

J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

16

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 45 in case 2:03-CV-02869 was distributed by fax, mail, or direct printing on October 19, 2005 to the parties listed.

---

Kenneth E. Douthat
ATTORNEY GENERAL OFFICE
P.O. Box 20207
Cordell Hull Bldg., 2nd fl.
Nashville, TN 37202--020

James E. King
ESKINS KING, PC
50 N. Front St.
Ste. 1170
Memphis, TN 38103

Bradley W. Eskins
ESKINS KING, PC
50 N. Front St.
Ste. 1170
Memphis, TN 38103

Kevin Steiling
STATE ATTORNEY GENERAL'S OFFICE
P.O. Box 20207
Nashville, TN 37202--020

Honorable J. Breen
US DISTRICT COURT